IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENYA WILSON and BOBBY ELDER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 10 C 3898 |
| | ) | |
| VILLAGE OF DOLTON, POLICE | ) | Judge John Z. Lee |
| SERGEANT LACEY #54, and | ) | |
| POLICE OFFICER JOHNSON #526, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenya Wilson and Bobby Elder have sued the Village of Dolton, Police Sergeant Lewis Lacey, and Police Officer Daniel Johnson for excessive force and false arrest in violation of their rights guaranteed by the Fourth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983 as well as malicious prosecution under state law. Defendants have moved for summary judgment as to the false arrest claims, Elder's excessive force claim, as well as the state law battery and malicious prosecution claims. For the reasons provided herein, the Court grants in part and denies in part the motion.

### Facts

On October 24, 2009, at 3:00 a.m., Wilson and Elder left Mr. Rickey's Nightclub in Dolton, Illinois, after celebrating the birthday of Wilson's brother, Mario Wilson. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 9-14.) Around that time, the nightclubs in Dolton were closing, and Wilson and Elder left Mr. Rickey's. (*Id.* ¶ 15.) Plaintiffs contend and defendants dispute that when Wilson and Elder left the nightclub, a fight broke out among a group of men in the street that lasted two seconds, and the men dispersed before

Wilson and Elder approached the door of their vehicle. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 16.) Wilson walked past Elder's car to speak with her cousin Ralph McNeal, whose vehicle was parked next to Elder's car. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6.) Defendants state that McNeal's car was parked in the middle of the street. (*See* Pls.' Ex. 6, Johnson Dep. at 22.) Shortly after Wilson reached McNeal's car, a Dolton police officer spoke with Wilson, patted her on the back, and asked her to make sure everybody got in their cars and to drive safely. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 7.) However, the facts after that point are vigorously contested.

With regard to Wilson, it is disputed whether she was resistant and made a disturbance when told to leave the scene. (Defs.' LR 56.1(a)(3) Stmt. ¶ 23.) According to defendants, Dolton police officers saw Wilson and Elder involved in an altercation with others and repeatedly informed Wilson to leave the middle of the street where McNeal's car was located, but Wilson failed to comply. (*Id.* ¶¶ 22-23.) According to Wilson, the following events occurred almost simultaneously: (1) Dolton officers screamed "Get in your cars, no standing, just get in your cars;" (2) Lacey yelled, "f**k it, lock they ass up"; and Johnson sprayed Wilson with pepper spray and hit her on the head and legs. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 22-23; *see* Defs.' Ex. 4, Johnson Dep. at 26 (stating that Johnson sprayed Wilson with one burst of pepper spray).) Wilson states that she did not have any altercation, argument, or fight with anyone prior to her getting sprayed. (*Id.* ¶ 27.) It is also disputed whether Wilson refused to be handcuffed. (*Id.* ¶ 26.) According to defendants, Officer Johnson sprayed Wilson only after she resisted being handcuffed (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 26-27), but according to Wilson, she did not struggle while being handcuffed. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 26.) It is undisputed

that Lacey arrested Wilson and that she was charged with obstructing a peace officer and resisting arrest, charges that were later stricken with leave to reinstate. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 31-32, 37.)

With regard to Elder, like Wilson, he states that immediately after he heard someone say, "lock they ass up," he was sprayed with pepper spray and hit three to four times in the head and two times in the leg. (Defs.' Ex. 2, Elder Dep. at 18.) It is undisputed that Elder was sprayed with pepper spray. (*Id.* ¶19.) However, Elder did not see who sprayed or hit him because "everything was happening so fast." (Pls.' Ex. 5, Elder Dep. at 20.) According to defendants, when Lacey and Johnson were attempting to take Wilson into custody and Johnson sprayed Wilson, Elder grabbed Johnson by the arm and attempted to prevent him from arresting Wilson. (Defs.' LR 56.1(a)(3) Stmt. ¶ 28; *see* Defs.' Ex. 5, McQueen Dep. at 15 (stating "I saw Officer Johnson and Sergeant Lacey were attempting to take someone into custody. It appeared to be a female at the time.").) Elder denies grabbing Johnson by the shoulder or arm or attempting to prevent Lacey or Johnson from arresting Wilson. (Pls.' LR 56.1(b)(3)(b) Stmt. ¶ 28.) It is undisputed that defendant Johnson signed the complaints against Elder and that Elder was charged with obstructing a peace officer, resisting arrest, and battery, all of which were later stricken with leave to reinstate. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 34-35, 37.)

It is also disputed whether, shortly after the arrests, Lacey spoke with Wilson and told her that he was going to drop all charges when they went to court. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 26.) It is disputed whether Lacey apologized for what had happened and stated that it was a "misunderstanding." (*Id.*)

3

**Discussion**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views "the facts in a light most favorable to the nonmovant, and draw[s] all reasonable inferences in that party's favor." *Lane v. Williams*, 689 F.3d 879, 881 (7th Cir. 2012).

Defendants argue that they should be afforded qualified immunity as to plaintiffs' false arrest claims and Elder's excessive force claim. "Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional right of which a reasonable person would have known at the time." *Betker v. Gomez*, ___ F.3d ____, No. 11–3009, 2012 WL 3834835, at *5 (7th Cir. Sept. 5, 2012); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "There is a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Betker*, 2012 WL 3834835, at *5 (quotation omitted). However, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

The parties present conflicting versions of the material facts that underlie the plaintiffs' false arrest claims and Elder's excessive force claims such that it would be improper to determine prior to trial whether defendants should be afforded qualified immunity. The claims are addressed in turn.

4

First, plaintiffs dispute defendants' statements of facts that there was probable cause to arrest Wilson and Elder. Whether a reasonable officer in Lacey's or Johnson's position would have believed that he was violating clearly-established right to be free from false arrest and whether such right was, in fact, violated depends on whether: (1) Lacey's stating "lock they ass up" triggered the officers to arrest Wilson and Elder without probable cause; (2) Wilson and Elder refused to leave the area after being told to do so by the police officers; (3) Wilson and Elder resisted being handcuffed; and (4) Elder attempted to interfere with the arrest of Wilson. (*Compare* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 17-18, 22-24, 26-28, 30-32, 34, *with* Pls.' LR 56.1(b)(3)(B) Stmt. 17-18, 22-24, 26-28, 30-32, 34; *compare* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 8-9, 18, *with* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 8-9, 18.) In short, Wilson and Elder state that they never refused to leave the area, but Lacey and Johnson arrested them anyway. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 22; Pls.' LR 56.1(b)(3)(C) Stmt. ¶¶ 8-9, 11, 13, 15, 17-18.) Given these disputed facts, it would be improper to grant summary judgment in defendants' favor as to Wilson and Elder's false arrest claims.

Second, plaintiffs dispute defendants' statements of facts supporting their contention that they used only the amount of force necessary to arrest Elder. Whether Lacey or Johnson should be afforded qualified immunity as to Elder's excessive force claim and whether the officers, in fact, used excessive force depends on whether: (1) Elder refused to leave the area after being told to do so by the police officers; (2) Elder attempted to interfere with the arrest of Wilson; (3) Johnson or Lacey sprayed Elder with pepper spray; (4) Johnson or Lacey struck Elder on the head and leg; and, if so, (5) the timing of the use of such force during the incident. Defendants argue that because Elder

5

did not see who sprayed or hit him, no reasonable jury could infer that it was Johnson or Lacey. This Court disagrees. Officer Joel McQueen states that he saw Elder approach Johnson as Johnson and Lacey were attempting to take Wilson into custody. (Defs.' Ex. 5, McQueen Dep. at 15.) Further, because McQueen and Johnson state that Elder grabbed Johnson's arm (a fact that plaintiffs dispute) and Lacey was immediately present, a jury could reasonably infer that it was Johnson and/or Lacey who sprayed and hit him due to the fact that they were in close proximity to Elder. (*Id.* at 15-17; Defs.' Ex. 4, Johnson Dep. at 26-28.) Further, a jury could reasonably infer that because Johnson sprayed Wilson with pepper spray (an undisputed fact), he also had the apparatus to spray Elder. (Pls.' LR 56.1(b)(3)(C) ¶ 10.) Given Johnson's close proximity to Elder and Wilson, it is up to the jury to determine whether to believe Johnson's testimony that, although he sprayed Wilson, he did not spray Elder. (*See* Defs.' Ex. 4, Johnson Dep. at 26, 29.) Accordingly, because plaintiffs have raised a reasonable inference that Johnson and Lacey sprayed and hit him, the Court denies defendants' motion for summary judgment as to Elder's excessive force claim.

Third, defendants' argument is well taken that although plaintiffs addressed a purported state law battery claim in their response to defendants' summary judgment motion, plaintiffs' complaint failed to allege any such claim. There is no mention of plaintiffs' battery claim in the complaint, which alleges that "each plaintiff was deprived of rights secured by the Fourth Amendment to the Constitution of the United States, subjected to malicious prosecution, and suffered personal injuries." (*See* Compl. ¶ 10.) The Court's conclusion is further bolstered by the plaintiffs' prayer for relief, which specifically seeks compensatory damages from the City of Dolton for malicious

6

prosecution, but not battery. (*See id.* ¶ 11 ("[P]laintiffs requests [sic] that judgment be entered against . . . defendant City of Dolton and in favor of each plaintiff in the amount of fifty thousand dollars as compensatory damages on plaintiff's state law claim of malicious prosecution." Given that the Illinois Local Governmental and Governmental Employees Tort Immunity Act would also require the City of Dolton to pay the tort judgment as to the battery claim if Lacey and Johnson were found liable, the fact that plaintiffs did not seek such relief from the City of Dolton (and only sought such relief as to the malicious prosecution claim) further demonstrates that the complaint did not state a claim for battery. *See* 745 Ill. Comp. Stat. 10/9-102. Thus, the Court grants defendant's motion for summary judgment with regard to any purported state law battery claim.

Fourth, defendants argue that plaintiffs have failed to create a triable issue as to one element of their malicious prosecution claim. To prove malicious prosecution, plaintiffs must establish that: (1) "judicial proceedings were brought against the plaintiff;" (2) "there was a lack of probable cause for those proceedings;" (3) "the defendant demonstrated malice in instituting the proceedings;" (4) "the cause of action was terminated in the plaintiff's favor;" and (5) "the plaintiff was injured." *Korbelik v. Staschke*, 596 N.E.2d 805, 807 (Ill. App. Ct. 1992).

Defendants argue that it is undisputed that the criminal cases against Wilson and Elder were stricken with leave to reinstate ("SOL'd") and thus plaintiffs have failed to create a genuine issue as to a material fact regarding whether the causes of action were terminated in their favor. "Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation,

7

depends upon the circumstances under which the proceedings are withdrawn." *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352 (Ill. 1997) (quotation omitted). It is a plaintiff's burden to establish that the SOL constituted a final termination in his or her favor. *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996).

Wilson and Elder were criminally charged with resisting and obstructing a peace officer, and Elder was also charged with battery, all of which arose from the incident that occurred on October 24, 2009. (Group Ex. 8, Cert. Stmts. Disposition.) The statute of limitations for these crimes, which are Class A misdemeanors, is eighteen months after the commission. 720 Ill. Comp. Stat. 5/3-5(b). Because (1) the criminal charges against Wilson and Elder were SOL'd (Group Ex. 8, Cert. Stmts. Disposition); (2) as a matter of law, the time limit in which to reinstate those charges has now passed; and (3) it is disputed whether Lacey stated shortly after the arrests that he was going to drop all charges and it was a "misunderstanding" (Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 26), the Court holds that both Wilson and Elder have created a triable issue as to whether the criminal cases against them were terminated in their favor. Because this is the only basis on which defendants have moved for summary judgment as to this claim, the Court denies the motion as to plaintiff's malicious prosecution cause of action.

**Conclusion**

For the reasons provided herein, the Court grants in part and denies in part defendants' motion for summary judgment [doc. no. 30]. The motion is granted as to any purported state law battery claim because plaintiffs failed to allege any such claim in the complaint. The motion is denied in all other respects. The parties shall be prepared to schedule a settlement conference, final pretrial conference, final pretrial order due date, and trial date at the status hearing set for December 27, 2012 at 9:15 a.m.

SO ORDERED                                    ENTER: December 3, 2012

_____
JOHN Z. LEE
U.S. District Judge